UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DONALD T. BROWN, JR.

                       Petitioner,       **OPINION AND ORDER**
                                                  14-cv-5354 (SJF)
     -against-

WILLIAM LEE, Superintendent,

                       Respondent.
------------------------------------------------------------X

FILED
CLERK
9/25/2017 12:50 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**FEUERSTEIN, District Judge:**

       Presently before the Court is Petitioner Donald T. Brown, Jr.'s ("Petitioner" or "Brown") Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition"), which Respondent William Lee, Superintendent ("Respondent"), opposes. *See* Docket Entry ("DE") [1], [11]. For the reasons set forth herein, Brown's Petition is denied.

## I. BACKGROUND

### A. Criminal Activity

#### 1. Underlying Criminal Activity and Conviction

       At approximately 11:45 p.m. on September 3, 1998, Brown broke into a female neighbor's home while the woman was asleep in bed. *See* Affirmation of Karla Lato ("Lato Aff."), DE [11], ¶ 4. Brown repeatedly hit the woman over the head and face and threatened to kill her if she screamed. *Id.* For approximately two (2) hours, Brown raped and sodomized the victim, biting her face, nipples, legs, and back. *Id.* During the attack, Brown stated that he loved the victim's daughter, and that if he "couldn't have the victim's daughter, he would have the victim instead." *Id.* The victim told police officers that she recognized her assailant to be Brown, stating that Brown was both her neighbor and her daughter's schoolmate. *Id.* As Petitioner left the victim's home, he took bottles of the prescription drugs Lotrel and Zoloft from the victim's medicine cabinet. *Id.* Police officers identified Brown's fingerprints and underwear in the victim's home, and a canine unit

1

tracked Brown to a nearby playground where he was found passed out, wearing the victim's blouse, and in possession of the victim's prescription bottles. *Id.* Brown was taken to the police station, where he told officers that he rode his bicycle to the victim's home. *Id.* Officers subsequently recovered Brown's bicycle from the victim's home, and Brown's father identified the bicycle as belonging to Brown. *Id.*

Pursuant to Indictment No. 2088-98, Petitioner was charged with: (i) one (1) count of first degree burglary in violation of N.Y. Penal Law § 140.30; (ii) one (1) count of first degree rape in violation of N.Y. Penal Law § 130.35; (iii) one (1) count of first degree sodomy in violation of N.Y. Penal Law § 130.50; (iv) eight (8) counts of second degree assault in violation of N.Y. Penal Law § 120.05; and (v) four (4) counts of aggravated sexual abuse in violation of N.Y. Penal Law § 130.70. *Id.* at ¶ 5. In relation to a separate incident on June 27, 1998, pursuant to Indictment No. 1759-98, Petitioner was also charged with one (1) count of second degree burglary in violation of N.Y. Penal Law § 140.25. *Id.* On April 5, 1999, under the advisement of counsel, Brown entered into a negotiated plea and sentencing agreement, pleading guilty to: (i) second degree burglary pursuant to Indictment No. 1759-98; and (ii) first degree burglary, rape, and sodomy pursuant to Indictment No. 2088-98. *Id.* at ¶ 6. Brown waived his right to appeal and, on May 9, 1999, he was sentenced to a total aggregate term of imprisonment of thirty (30) years, including three (3) concurrent terms of twenty-five (25) years of imprisonment for Indictment No. 2088-98, and five (5) years of imprisonment for Indictment No. 1759-98. *Id.* Although Brown filed a Notice of Appeal on May 24, 1999, the resolution of that appeal is unclear based on the record before the Court, and Brown does not dispute that he failed to raise the grounds for relief identified in the instant Petition on direct appeal. *Id.* at ¶ 7; *see also* Pet. § 12.

2. Post-Conviction Proceedings

On August 18, 2003, Brown filed a motion seeking to reduce his sentence in the interest of justice in the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Second Department"). Lato Aff. ¶ 7. On November 14, 2003, the Second Department denied Petitioner's motion seeking to reduce his sentence. *See People v. Brown*, 1 A.D.3d 1066, 767 N.Y.S.2d 654 (2d Dep't 2003). Brown sought leave to further appeal the Second Department's denial of his motion to reduce his sentence, which the Court of Appeals of New York denied on January 27, 2014. *See People v. Brown*, 1 N.Y.3d 595, 776 N.Y.S.2d 227 (2004). On November 29, 2011, Petitioner filed an application in the Supreme Court of the State of New York, Suffolk County ("Supreme Court, Suffolk County") seeking to have post-supervision release removed from his sentence imposed under Indictment No. 1759-98 on the grounds that "on May 5, 1999 [he] was not properly sentenced to certain incarceratory terms." *See* Pet. § 11(a). Although the Supreme Court, Suffolk County removed the portion of Brown's sentence providing for post-supervision release, the term of incarceration provided for at the May 5, 1999 sentencing remained unchanged. *Id.* On December 27, 2011, Petitioner filed a second Notice of Appeal. *See* Lato Aff. ¶ 8. Brown failed to perfect his appeal, and, on July 26, 2013, the Second Department marked the appeal as abandoned. *Id.*

On March 3, 2014, Petitioner filed a motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10 in the Supreme Court, Suffolk County (the "Motion to Vacate"). *Id.* at ¶ 9. In his Motion to Vacate, Brown argued that: (i) his guilty plea was not knowing, intelligent, and voluntary; (ii) he received ineffective assistance of counsel; and (iii) he was actually innocent of the crimes of which he was convicted and sentenced. *Id.* at ¶¶ 9-11. In moving to vacate his conviction, Petitioner argued that he "suffered a serious traumatic brain injury as a child, suffers bipolar disorder and, due to drug and alcohol abuse, suffered from blackouts." *See* Pet. Ex. A. With respect to his

3

claim for ineffective assistance of counsel, Petitioner wrote that his claim was "based upon a waiver of a suppression issue and failure to investigate his medical issues as a defense." *Id.* On May 12, 2014, the Supreme Court, Suffolk County, denied Petitioner's Motion to Vacate in its entirety. *Id.* With respect to his guilty plea, the court held that, when he pled guilty, Petitioner "indicated that his plea was voluntary, knowing and intelligent," and the allocution "was proper and sufficient to establish the elements of the crime plead." *Id.* With respect to his claim of ineffective assistance of counsel, the court held that there was "no deprivation of effective assistance of counsel to seek suppression, where it had little or no chance of success." *Id.* The court further held that the record established "that the Defendant received an advantageous plea in light of the strong case, negating any claim of ineffective assistance of counsel . . . ." *Id.* Finally, the court held that, "in light of the strong case, a claim of actual innocence must be rejected." *Id.*

On May 30, 2014, Petitioner sought leave to appeal the Supreme Court, Suffolk County's Order denying his Motion to Vacate to the Second Department. *Id.* at ¶ 12. On July 21, 2014, the Second Department denied Brown's application seeking leave to appeal. *Id.* On December 19, 2014, Petitioner filed a motion to renew his Motion to Vacate pursuant to N.Y. Crim. Proc. Law § 440.10, claiming that *People v. Grubstein*, 24 N.Y.3d 500 (2014) "changed the law so that, 'a pro se defendant [] . . . is not barred from raising certain claims in a motion under CPL § 440.10 by his failure to raise it on direct appeal." *Id.* at ¶ 13. On February 2, 2015, the Supreme Court, Suffolk County, denied Brown's motion to renew, holding that "Brown misread the holding in *Grubstein* and because Brown was represented by counsel, a failure to raise an issue on direct appeal will bar consideration of a record based claim under CPL § 440." *Id.* On March 3, 2015, Petitioner sought leave to appeal the court's denial of his motion to renew to the Second Department. *Id.* at ¶ 14. On June 15, 2015, the Second Department denied Petitioner's application for leave to appeal. *Id.*

### B. The Instant Petition

On September 8, 2014, Petitioner commenced this action by filing a Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. DE [1]. According to Brown, he is entitled to a writ of habeas corpus pursuant to 28 U.S.C. § 2254 because: (i) he received ineffective assistance of trial counsel; (ii) he is actually innocent of the crimes for which he was convicted; and (iii) he was "highly intoxicated and was unable to form the requisite intent to commit the crimes of which he was convicted." Pet. § 12. Petitioner does not dispute that he failed to raise each of these grounds on direct appeal. *Id.* With respect to his claim that he received ineffective assistance of counsel, Brown argues, *inter alia*, that his trial counsel failed to: (i) investigate Petitioner's background to develop mitigating evidence; (ii) conduct a field investigation regarding the lack of DNA evidence identified on the rape kit or the victim; (iii) confront the victim with the lack of DNA evidence; (iv) raise the lack of DNA evidence at a *Huntley* hearing; and (v) discuss potential defenses with Petitioner. *Id.* With respect to his claim that he is actually innocent of the crimes for which he was convicted, Brown argues that: (i) the evidence against him was "highly circumstantial"; and (ii) the prosecutor masked the amount of DNA that was allegedly found in Brown's underwear. *Id.*

On September 24, 2014, the Court ordered Respondent to show cause, by filing a Return to the instant Petition, why a writ of habeas corpus should not be issued pursuant to 28 U.S.C. § 2254. DE [3]. On September 29, 2015, Respondent filed its Return in opposition to Brown's Petition. DE [11]. According to Respondent, Petitioner's claims are barred by the one (1)-year statute of limitations pursuant to 28 U.S.C. § 2244. *See* Respondent's Memorandum of Law ("Resp.'s Opp'n"), DE [11-1], at 3-5. Respondent further argues that, even if Petitioner's claims are not deemed untimely, he is still not entitled to federal habeas relief because each of his claims lacks merit. *Id.* at 6-22. On October 29, 2015, Petitioner filed a Reply in further support of his Petition,

5

in which he argues, *inter alia*, that the "result of the DNA found in the victim's vagina and anus had . . . no evidence at all that [the victim] was raped." *See* Reply in Further Support of Petition ("Pet.'s Reply Mem."), DE [13], at ¶ 20. According to Petitioner, "[t]he DNA evidence which counsel failed to present was so vital to a constitutional[ly] sufficient defense in this case." *Id.* at ¶ 21.

## II. LEGAL STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court "shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Therefore, federal habeas review is limited to determining whether a petitioner's custody violates federal law, and "does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 861 (2011) (internal quotation marks omitted). The AEDPA further provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 786 (2011) ("As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings."); *Maldonado v. Lee*, No, 09-CV-5270, 2012 WL 3240710, at *2 (E.D.N.Y. July 31, 2012) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.") (internal quotation omitted). An unreasonable

6

application of established federal law occurs "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000). An unreasonable determination of the facts in light of the evidence presented in state court occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* It is well established that the state court's unreasonable application of law or determination of facts must have been more than merely "incorrect or erroneous"; it must have been "objectively unreasonable." *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001); *see also Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) ("[I]t is well-established in this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.") (internal quotation marks omitted).

### III. DISCUSSION

As discussed above, Petitioner seeks relief under 28 U.S.C. §2254 on the grounds that: (i) he received ineffective assistance of counsel; and (ii) he is actually innocent of the crimes for which he was convicted. *See* Pet. § 12. In opposition, Respondent argues that Brown's Petition should be denied because: (i) the Petition is untimely pursuant to the AEDPA's one (1)-year statute of limitations; (ii) Petitioner's constitutional right to counsel was not violated; and (iii) Petitioner's claim of actual innocence is meritless. *See* Resp.'s Opp'n at 3-24. Applying the standards outlined above, and for the reasons set forth herein, Brown's Petition is denied.

7

### A. Timeliness

The AEDPA provides that "a prisoner in state custody has one year after the date his conviction became final in which to file a habeas petition." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 69 (2d Cir. 2001) (citing 28 U.S.C. § 2244(d)(1)). A judgment of conviction becomes "final" pursuant to the AEDPA "upon completion of a defendant's direct appeal in the respective state's highest court and the United States Supreme Court." *Hutzenlaub v. Portuondo*, 232 F. Supp. 2d 40, 42 (E.D.N.Y. 2002). However, the AEDPA's one (1)-year statute of limitations period "is tolled while 'a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'" *Palmeri v. Greiner*, 175 F. Supp. 2d 461, 464 (E.D.N.Y. 2001) (quoting 28 U.S.C. § 2244(d)(2)); *see also Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 167 (S.D.N.Y. 2000) ("[T]he AEDPA's one-year limitations period is subject to equitable tolling in appropriate circumstances."). Relevant here, a motion to vacate a judgment pursuant to N.Y. Crim. Proc. Law § 440.10 is an application for post-conviction relief sufficient to toll the AEDPA's statute of limitations. *See, e.g.*, *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999) (analyzing the timeliness of a petition under the AEDPA where a motion to vacate a judgment pursuant to N.Y. Crim. Proc. Law § 440.10 had been filed).

According to Respondent, the AEDPA's one (1)-year statute of limitations began to run when Petitioner's November 29, 2011 resentencing became a final conviction. Resp.'s Opp'n at 4. In determining the date on which Brown's conviction became final, Respondent observes that, after failing to perfect his December 27, 2011 Notice of Appeal, the Second Department marked the appeal as abandoned on July 26, 2013. *Id.* Respondent argues that Petitioner's "conviction became final thirty days later on August 26, 2013," and that "[t]he one year statute of limitations within which this petition should have been filed expired on August 26, 2014." *Id.* Accordingly,

Respondent argues that Brown's September 8, 2014 Petition is untimely, and that Petitioner "has failed to present a credible and compelling claim of equitable tolling." *Id.* at 5.

Contrary to Respondent's argument, pursuant to 28 U.S.C. § 2244, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . . ." 28 U.S.C. § 2244(d)(2); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (observing that "proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run"). As respondent concedes, the Second Department marked Petitioner's direct appeal as abandoned on July 26, 2013, and Petitioner's judgment of conviction therefore became final thirty (30) days later on August 26, 2013—the date on which Brown's time to seek review by the New York State Court of Appeals expired. *See* Lato Aff. ¶ 8; *see also Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009) ("[A] state court petition is pending from the time it is first filed until the time it is finally disposed of and further appellate review is unavailable under the particular state's procedures.") (internal quotation and alteration omitted); *Jarman v. New York*, 234 F. Supp. 2d 213, 215 (E.D.N.Y. 2002) ("[P]etitioner's final date of conviction, for the purpose of assessing the one year limitations period under AEDPA, is the date upon which the thirty day deadline for seeking leave to appeal expired."); N.Y. Crim. Proc. Law § 460.10(5)(a) (requiring that a notice of appeal be filed within "thirty days after service upon the appellant of a copy of the order sought to be appealed"). When Brown filed his Motion to Vacate pursuant to N.Y. Crim. Proc. Law § 440.10 on March 3, 2014, one hundred and eighty-nine (189) days had elapsed since the date on which his judgment of conviction became final on August 26, 2013. Upon filing his Motion to Vacate, the AEDPA's one (1)-year statute of limitations was then tolled until July 21, 2014—the date on which the Second Department denied Brown's application seeking leave to appeal. *See* 28

U.S.C. § 2244(d)(2); *see also Ruiz v. Poole*, 566 F. Supp. 2d 336, 340 (S.D.N.Y. 2008) (observing that the filing of a motion to vacate pursuant to N.Y. Crim. Proc. Law § 440.10 "triggered the statutory tolling period under AEDPA"). When Brown filed the instant Petition on September 8, 2014, an additional forty-nine (49) days had elapsed since the date on which the tolling period ended on July 21, 2014. Accordingly, when Petitioner commenced this action on September 8, 2014, a total of two hundred and thirty-eight (238) days had elapsed since Brown's judgment of conviction became final. Therefore, the instant Petition is timely for purposes of the AEDPA's one (1)-year statute of limitations.

### B. Ineffective Assistance of Counsel

The Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 (1970) (observing that "the right to counsel is the right to *effective* assistance of counsel") (emphasis added). A petitioner who challenges "his conviction and sentence on the basis of ineffective assistance of counsel bears a heavy burden." *Antonelli v. United States*, No. 98-2972, 2000 WL 311066, at *1 (2d Cir. 2000). The Supreme Court has held that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). Therefore, "[a] defendant claiming ineffective assistance of counsel must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores–Ortega*, 528 U.S. 470, 476-77, 120 S. Ct. 1029, 1034 (2000) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064). Relevant here, "[a]lthough the *Strickland* test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel."

*Utenyshev v. Portuondo*, No. 00-CV-6529, 2003 WL 21499841, at *6 (E.D.N.Y. June 11, 2003); *see also Dominique v. Artus*, 25 F. Supp. 3d 321, 337 (E.D.N.Y. 2014) ("The same standard regarding ineffective assistance of trial counsel under *Strickland* . . . applies to the question of appellate counsel.").

Under the first prong of the *Strickland* test, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). It is well established that "[t]he Court must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Franco v. Lee*, No. 10-CV-1210, 2013 WL 704655, at *12 (E.D.N.Y. Feb. 26, 2013) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Therefore, a claim of ineffective assistance of counsel "cannot be based on counsel's failure to raise all nonfrivolous arguments on appeal." *DeVaughn v. Graham*, No. 14-CV-2322, 2017 WL 244837, at *17 (E.D.N.Y. Jan. 19, 2017) (citing *Jones v. Barnes*, 463 U.S. 745, 754, 103 S. Ct. 3308, 3314 (1983)). To satisfy the second prong of the *Strickland* test, "any deficiencies in counsel's performance must be prejudicial to the defense . . . ." *Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067. Therefore, in analyzing the second prong of an ineffective assistance of counsel claim, the question "is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005).

According to Petitioner, he received ineffective assistance of counsel because his trial counsel failed to: (i) investigate Brown's background in order to develop mitigating evidence; (ii) conduct a field investigation regarding the lack of DNA evidence; (iii) confront the victim with the lack of DNA evidence linking Brown to the crime; (iv) raise the lack of DNA evidence at the

*Huntley* hearing; (v) discuss with Brown his potential defenses available; and (vi) force the court to issue a decision after the conclusion of the *Huntley* hearing. *See* Pet. § 12; *see also* Pet.'s Reply Mem. ¶ 1. However, it is well established that claims of ineffective assistance of counsel that "involve counsel's pre-plea actions and do not affect the voluntariness of the plea itself," are waived by a petitioner's subsequent "voluntary, knowing and intelligent guilty plea." *Beckary v. Chappius*, No. 11-CV-850, 2012 WL 3045691, at *10 (W.D.N.Y. July 25, 2012); *see also Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *Burwell v. Perez*, No. 10 Civ. 2560, 2012 WL 1596685, at *6 (S.D.N.Y. May 3, 2012) ("Because [the petitioner's] guilty plea was voluntary and intelligent, [his] ineffective assistance claim, which concerns only his counsel's pre-plea actions (or failures to act), fails to state a violation of his constitutional rights that this Court can consider."). Petitioner does not dispute that he pled guilty to the crimes for which he was convicted, and he does not claim that he decided to plead guilty "based on erroneous advice on a material point given in the context of his decision to plead guilty."[1] *Anthoulis v. New York*, No. 12 Civ. 6253, 2013 WL 5726154, at *7 (E.D.N.Y. Oct. 21, 2013). To the contrary, in denying Petitioner's Motion to Vacate, the trial court observed that, given the strong evidence against Petitioner, he received an advantageous plea, "negating any claim of ineffective assistance of counsel as [he] did receive meaningful representation." Pet. Ex. A. As the actions of which Petitioner complains occurred prior to his guilty plea, and because

---

[1] Although Petitioner argues in his Reply that he "did not received [*sic*] effective assistance of plea counsel's representation," *see* Pet.'s Reply Mem. at 9, the alleged deficiencies in assistance do not relate to his decision to plead guilty. Rather, Petitioner takes issue with his counsel's use of DNA evidence at a *Huntley* hearing, writing that it was unclear whether "his plea attorney's response, or lack thereof, to the DNA evidence was a mistake caused by an incomprehension of DNA evidence that compromised his ability to formulate a defense, or merely a series of strategic decisions that are certainly not apparent from the *Huntley* hearing record." *Id.*

Petitioner neither claims that he received ineffective assistance in negotiating the plea nor currently disputes that his guilty plea was knowing and voluntary, his claims for ineffective assistance of counsel have been waived and are not properly reviewed by this Court. Therefore, insofar as Petitioner seeks relief pursuant to 28 U.S.C. § 2254 as a result of ineffective assistance of counsel, his Petition is denied.

### C. **Actual Innocence**

Petitioner further argues that he is entitled to relief under 28 U.S.C. § 2254 because he is actually innocent of the crimes for which he was convicted. Pet. § 12. The Supreme Court has "never expressly held that a petitioner may qualify for habeas relief based solely on a showing of actual innocence." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012). To the contrary, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400, 113 S. Ct. 853, 860 (1993). Relevant here, "the Supreme Court has recognized that, in rare cases, an assertion of innocence may allow a petitioner to have his accompanying constitutional claims heard despite a procedural bar." *Olivares v. Ercole*, 975 F. Supp. 2d 345, 352 (S.D.N.Y. 2013) (internal quotation omitted); *see also McQuiggin v. Perkins*, --- U.S. ---, 133 S. Ct. 1942, 1931 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."). Therefore, pursuant to the two (2) part test developed in *Schlup v. Delo*, a petitioner's claim of actual innocence may serve as a "gateway" for allowing otherwise procedurally barred claims where the petitioner's claim is both: (i) credible, and (ii) compelling. *Schlup v. Delo*, 513 U.S. 298, 299, 115 S. Ct. 851, 853 (1995).

To satisfy the first prong of the *Schlup* standard, the petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

13

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S. Ct. at 865; *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (observing that a petitioner must "present new reliable evidence that was not presented at trial and show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt") (internal quotation omitted). Therefore, "a petitioner's bare statement that he is innocent is insufficient." *Rodriguez v. Marshall*, No. 07-CV-1328, 2011 WL 2650196, at *4 (E.D.N.Y. June 29, 2011). To satisfy the second prong of the *Schlup* test, "the claim must be 'compelling,' so that, when viewed in the light of all the available evidence, it is 'more likely than not no reasonable juror would have convicted him in the light of the new evidence.'" *Diaz v. Bellnier*, 974 F. Supp. 2d 136, 143 (E.D.N.Y. 2013) (quoting *Schlup*, 513 U.S. at 324, 115 S. Ct. at 865). It is well established that, "[t]o meet the *Schlup* standard, a petitioner must establish a claim that is *both* credible *and* compelling." *Diaz*, 974 F. Supp. 2d at 143 (emphasis in original). The Supreme Court has observed that the *Schlup* standard is "demanding" and that it requires a petitioner to present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin*, 133 S. Ct. at 1936; *see also House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 2077 (2006) ("[T]he *Schlup* standard is demanding and permits review only in the extraordinary case.") (internal quotation omitted).

Petitioner is not entitled to relief under 28 U.S.C. § 2254 on actual innocence grounds. As an initial matter, having concluded both that Petitioner's claims are not barred by the AEDPA's one (1)-year statute of limitations and that Petitioner did not suffer an independent constitutional violation in his underlying criminal proceedings, his claim of actual innocence does not provide an independent basis for federal habeas relief. *See Herrera*, 506 U.S. at 400, 113 S. Ct. at 860; *Rivas*, 687 F.3d at 520. Furthermore, Petitioner fails to satisfy the *Schlup* standard, as he fails to identify

credible or compelling evidence in support of his claim that he is actually innocent of the crimes for which he pled guilty and was convicted. Rather, Petitioner argues that he "has presently compelling evidence that he is actually innocent," including the "results of the DNA testing," which include "no evidence at all that the victim was raped." Pet.'s Reply Mem. ¶ 11. According to Petitioner, "the D.N.A. testing shows that the rape kit was not adducing any evidence that there was pubic hair and semon [*sic*] or D.N.A. or any physical traces or signs of forced sexual intercourse," *see* Pet. § 12, and "the result of the DNA found in the victim's vagina and anus had . . . no evidence at all that [the victim] was raped." Pet.'s Reply Mem. ¶ 20. However, even accepting as true Petitioner's argument that the results of the DNA testing do not conclusively establish that he committed the crimes for which he was convicted, the DNA testing results are also not exculpatory in his favor, as they do not conclusively demonstrate that another individual committed the crime or definitely establish that he did not commit the crime. Rather, other evidence of Petitioner's guilt includes, *inter alia*, "the victim's recognition of Brown as her assailant, his underwear and fingerprints in her home, Brown's admission of being at the crime scene, [and] Brown [being] found wearing the victim's clothing and in possession of her medication . . . ." Resp.'s Opp'n at 24. As Petitioner fails to "present new reliable evidence that was not presented at trial," *Lucidore*, 209 F.3d at 114, he is not entitled to federal habeas relief as a result of his alleged actual innocence. Therefore, insofar as Petitioner seeks relief pursuant to 28 U.S.C. § 2254 on the ground that he is actually innocent of the crimes for which he was convicted, his Petition is denied.

## IV. CONCLUSION

For the reasons set forth herein, Brown's Petition is denied. Because it is clear from the record that Brown is not entitled to the relief provided for in 28 U.S.C. § 2254, the Court will not hold an evidentiary hearing on his motion. The Court declines to issue a certificate of appealability because Brown has not "made a substantial showing of the denial of a constitutional right" pursuant

15

to 28 U.S.C. § 2253(c).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920 (1962).  The Clerk of the Court is directed to serve notice of entry of this Order upon Brown in accordance with Rule 5(b) of the Federal Rules of Civil Procedure and to close this case.


Dated: Central Islip, New York  **SO ORDERED.**
      September 25, 2017

*s/ Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge